Robert L. Sterup
Brown Law Firm, PC
315 North 24th Street
Billings, Montana 59101
Telephone: (406) 248-2611
Facsimile: (406) 248-3128
rsterup@brownfirm.com

Barry Barnett (*pro hac vice* forthcoming)
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
bbarnett@susmangodfrey.com

Attorneys for Plaintiff Talen Montana, LLC
Additional Attorneys listed in signature block

CLERK OF THE
DISTRICT COURT
TERRY HALPIN

2021 MAY -4  P 4: 49

FILED
BY_____
DEPUTY

## Montana Thirteenth Judicial District Court
## Yellowstone County

| | |
|---|---|
| Talen Montana, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Avista Corporation; NorthWestern Corporation; PacifiCorp; Portland General Electric Company; and Puget Sound Energy, Inc., <br><br> Defendants. | DV 2 1 - 0 5 1 1 <br><br> Cause No. _____ <br><br> Judge: Ashley Harada <br><br> Complaint for Declaratory Judgment and Petition to Compel Arbitration |

Plaintiff Talen Montana, LLC ("Talen Montana") respectfully states the following:

### Necessity of Action

1.      Since the 1980s, the people of the State of Montana and the City of Colstrip have relied on the Colstrip Steam Electric Station for jobs, power, and prosperity.  Now mandates by the States of Washington and Oregon have put Colstrip's future at risk.  Four of Colstrip's co-



owners—Avista Corporation, PacifiCorp, Portland General Electric Company, and Puget Sound Energy—are attempting to force Colstrip to close by the end of 2025, in obedience to Washington's ban on the sale of electricity from Colstrip and other plants that generate power from coal. They are also trying to compel arbitration of Colstrip's fate in Washington by a single arbitrator to be chosen by a Washington court, in disobedience to controlling Montana law requiring arbitration in Montana before three arbitrators. As the Operator and a co-owner of Colstrip, Talen Montana brings this action for declaratory and injunctive relief, including a declaration that the arbitration over its and Montana's future must be held in Montana before a panel of three arbitrators applying Montana law. *See* Mont. Code § 27-5-323.

## The Parties

2.      Plaintiff Talen Montana is a Delaware limited liability company with its principal place of business in The Woodlands, Texas. Talen Montana is the Operator of and a co-owner of Colstrip.

3.      Defendant Avista Corporation ("Avista") is a Washington investor-owned utility with its principal place of business in Spokane, Washington. Avista serves customers in Idaho, Montana, Oregon, and Washington. Avista is a co-owner of Colstrip.

4.      Nominal Defendant NorthWestern Corporation ("NorthWestern") is a Delaware corporation with its principal place of business in Sioux Falls, South Dakota. NorthWestern is an investor-owned utility that serves customers in Montana, Nebraska, South Dakota, and Yellowstone National Park. NorthWestern is a co-owner of Colstrip.

5.      Defendant PacifiCorp is a wholly-owned subsidiary of Berkshire Hathaway Energy with two business units: Pacific Power and Rocky Mountain Power. Pacific Power is a regulated electric utility based in Portland, Oregon that provides services to customers in

2

California, Oregon, and Washington. Rocky Mountain Power is a regulated electric utility based in Salt Lake City, Utah that provides services to customers in Idaho, Utah, and Wyoming. PacifiCorp is a co-owner of Colstrip.

6.      Defendant Portland General Electric Company ("Portland") is an investor-owned Oregon utility with its principal place of business in Portland, Oregon.   Portland serves customers in Oregon.  Portland is a co-owner of Colstrip.

7.      Defendant Puget Sound Energy, Inc. ("Puget") is a Washington investor-owned utility with its principal place of business in Bellevue, Washington.  Puget serves customers in Washington.  Puget is a co-owner of Colstrip.

Jurisdiction and Venue

8.      This Court has original jurisdiction over the subject matter of this action, Mont. Code § 3-5-302(1)(b), and has personal jurisdiction over Defendants, Mont. R. Civ. P. 4(b)(1)(A), 4(b)(1)(C).

9.      Venue is proper in this Court under Montana Code § 27-5-323. NorthWestern has a place of business in Yellowstone County, including a customer service office in Billings, Montana. In addition, Colstrip's transmission line runs through Yellowstone County.

Additional Allegations Common to all Counts

A.      Colstrip's Importance to Montana

10.     Montanans rely on Colstrip for both electricity generation and economic opportunity. It is particularly important to the City of Colstrip.

11.     As of the 2020 census, the City of Colstrip is home to 2,196 people, many of whom work directly at Colstrip or for local businesses that support it.

3

Complaint

12. Colstrip has two active, coal-fired generating units—Units 3 and 4—which are together capable of producing up to 1,480 Megawatts of electricity. Unit 3 became active in 1983, and Unit 4 followed in 1985. (Units 1 and 2 were built much earlier and were retired in 2020.)

13. Colstrip is vital to Montana's economy. In 2018, the University of Montana's Bureau of Business and Economic Research examined how a hypothetical 2027 retirement of Colstrip would impact jobs, income, population, and economic output throughout Montana. The study concluded that the negative economic effects would be dramatic and felt throughout the state:

      a. Approximately 3,300 jobs would be lost;

      b. Household income in Montana would fall by between $250 million and $350 million per year;

      c. Montana's population would decline by approximately 7,000 as people left the state in search of better opportunities; and

      d. Montana would lose more than $1.2 billion in tax and nontax revenues, not including additional losses to local governments from declining property tax revenue and coal gross proceeds taxes.

14. The consequences would be felt throughout the state. Jobs in the service industry, retail, and construction would evaporate. Declining tax revenues would force cuts in government services. Even seemingly unrelated industries, such as health care, would suffer due to reduced incomes and populations.

15. The consequences of shuttering Colstrip are dire and there is no good reason to do so because it is producing electricity consistent with prudent utility practice or "PUP."

4

Complaint

B.      Avista, PacifiCorp, Portland, and Puget Try to Close Colstrip Prematurely

16.     Avista, PacifiCorp, and Puget want Colstrip closed, not because it is broken, but because their market for Colstrip-produced electricity will shrink in 2026 when a new Washington law will prevent them from using this electricity to serve customers in Washington. *See* RCW Chapter 19-405. Similarly, Portland exports electricity exclusively to Oregon, which will not accept coal-generated electricity after 2029 (and may accelerate that timeline). *See* ORS 757.518(2).

17.     During the 2021 budgeting cycle, Avista, PacifiCorp, Portland, and Puget took the idiosyncratic and self-interested position that Talen Montana must operate Units 3 and 4 as if they are being retired before January 1, 2026, when they lose a portion of their market for Colstrip-produced electricity.

18.     As Operator, Talen Montana is guided by the parties' Ownership & Operation Agreement ("O&O Agreement"), which provides that Colstrip should continue to operate as long as it is capable of producing electricity consistent with PUP and not at an arbitrary date determined by factors peculiar to a particular co-owner or group of co-owners.

19.     Section 32 of the O&O Agreement confirms the parties' intent to run Colstrip for so long as it can produce electricity consistent with PUP. It does so by providing that the O&O Agreement (and the parties' obligations under it, including the obligation to submit and approve operating budgets) "shall continue for so long as the Project or any part thereof . . . is, or can be made, capable of producing electricity consistent with Prudent Utility Practice or the requirements of governmental agencies having jurisdiction."

20.     No one disputes that Colstrip is currently producing electricity consistent with PUP.  Nor has anyone claimed that Colstrip will become incapable of producing electricity

5

Complaint

consistent with PUP after 2025. The focus of some co-owners on a 2025 retirement appears to rest entirely on the inability to sell Colstrip-produced electricity to Washington customers after 2025 and to Oregon customers after 2029.

21.    NorthWestern likewise has rejected the efforts of Avista, PacifiCorp, Portland, and Puget to close Colstrip. It recently initiated an arbitration to "obtain a definitive answer to the questions of what vote is required to close Units 3 and 4 and what is the obligation of each co-owner to fund operations of the plant."

22.    Talen Montana, as Operator and a co-owner, looks forward to proving that Colstrip need not be retired merely because some co-owners have a desire driven by circumstances peculiar to them and external to Colstrip to abandon Colstrip and avoid their obligations to fund their share of costs by 2025.

C.    Avista, PacifiCorp, Portland, and Puget's Invalid Petition to Compel Arbitration in Washington

23.    On February 9, 2021, NorthWestern provided notice that it intended to initiate an arbitration within thirty days to resolve the dispute over whether Avista, PacifiCorp, Portland, or Puget could force Colstrip to close in 2025.

24.    On March 12, 2021, NorthWestern served an arbitration demand, which it amended on April 2, 2021.

25.    The co-owners engaged in preliminary negotiations about rules and procedures for a potential arbitration, including during an introductory telephone call on March 30, 2021.

26.    Talen Montana proposed a comprehensive agreement regarding a potential arbitration and included in it a proposal that the parties agree to venue in Montana before a panel of three arbitrators, which is what Montana law requires. A panel of three arbitrators is also

6

more likely to reach a well-reasoned decision consistent with the law and the governing contract than a single arbitrator.

27.     By contrast, the other co-owners proposed that arbitration occur in Washington, before a single arbitrator, and cited an arbitration provision in the O&O Agreement.

28.     During the March 30 introductory call, the parties discussed the venue and panel makeup proposals and scheduled a follow-up discussion for April 28, 2021.

29.     On April 14, 2021—two weeks before the parties' scheduled meeting to discuss proposals regarding arbitration venue and procedures—Avista, PacifiCorp, Portland, and Puget filed a lawsuit in the Superior Court of the State of Washington for Spokane County, seeking an order compelling the co-owners to arbitrate in Washington under the Washington Uniform Arbitration Act before a single arbitrator.

30.     The filing came on the same day Avista, PacifiCorp, Portland, and Puget failed in their aggressive lobbying effort to defeat Montana Senate Bill 265, which provides that "[a]n agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the Uniform Arbitration Act."  Senate Bill 265 is now law and invalidates the arbitration provisions relied on by Avista, PacifiCorp, Portland, and Puget in the Washington lawsuit.

D.     The Court Should Enjoin the Parties to Comply with Montana Law

31.     The attempt to compel the co-owners to arbitrate in Washington is invalid for a number of reasons.

7

Complaint

32.     First, the O&O Agreement's venue provisions allowing for arbitration in Washington, § 18, and interpreting § 18 based on Washington law, § 34(c), are not enforceable as a matter of law.

33.     Montana Code § 27-5-323 provides that an "agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the Uniform Arbitration Act." S.B. 265, 67th Leg. (Mont. 2021). The amendment became effective upon passage and approval and applies retroactively to petitions to compel arbitration made on or after January 1, 2021.

34.     The Montana Legislature declared a legislative purpose that "electrical generation facilities located in Montana have significant implications for the economy, environment, and health and welfare of Montana consumers;" and that "arbitration of disputes concerning Montana electrical generation facilities outside of Montana threatens Montana's laws, policies, and the interests of Montana in securing and maintaining a reliable source of electricity." This is particularly true for Colstrip, which thousands of Montanans rely on for both power and economic opportunity.

35.     Montana law therefore requires that this arbitration be venued in Montana (not Washington), held before a panel of three arbitrators (not one), and governed by the Montana Uniform Arbitration Act (not the Washington Uniform Arbitration Act).

36.     Second, the Washington petition is premature under Section 18 of the O&O Agreement. Even if it were valid, which it is not, O&O Agreement § 18 would allow a co-owner to ask a Washington court to appoint an arbitrator only after it is clear that the co-owners "cannot mutually agree upon [an] Arbitrator." O&O Agreement § 18 ("If the Project Users cannot

8

mutually agree upon such Arbitrator, then upon petition of any Project User, such Arbitrator shall be appointed by the Superior Court of the State of Washington, in and for the County of Spokane.").

37.     No party has even proposed an arbitrator, so there cannot possibly be an impasse in negotiations that would allow for the Washington lawsuit. The parties merely exchanged proposals about the procedures for the arbitration, including the number of arbitrators, and then agreed to table those discussions until after responsive pleadings were filed in the arbitration.

38.     In their Washington petition, the Avista, PacifiCorp, Portland, and Puget did not allege that the parties "cannot mutually agree" on selecting an arbitrator. Nor could they. As their petition correctly acknowledges, Talen Montana *"proposed* that" the arbitration occur in Montana before a panel of three arbitrators.

39.     Third, the Washington court does not have jurisdiction over this dispute.

40.     That is because Talen Montana is not subject to personal jurisdiction in Washington, there is not a sufficient case or controversy to support subject matter jurisdiction, and potential disagreements in the future over budgeting decisions under the O&O Agreement are neither sufficiently concrete nor properly resolved by an arbitrator before the decisions have been timely presented and made.

Count 1: Declaratory Judgment

41.     Talen Montana re-alleges ¶¶ 1-40.

42.     There is a dispute among the parties regarding venue for the arbitration that NorthWestern has demanded.

43.     Montana Code § 27-5-323 provides that "An agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires

9

that arbitration occur within the state before a panel of three arbitrators selected under the Uniform Arbitration Act."

44.     Colstrip is an electrical generation facility located in Montana.

45.     Under Montana law, the arbitration venue clauses of the O&O Agreement, providing for arbitration in Washington State under the Washington Uniform Arbitration Act, are invalid.

46.     Any person interested under a written contract may have determined any question of validity arising under the contract.   Mont. Code § 27-8-202.

47.     Talen Montana therefore seeks an order declaring that Sections 18 and 34(c) of the O&O Agreement are invalid under Montana Code § 27-5-323 insofar as they (1) require that any arbitration be conducted in Washington; (2) permit a Washington court to appoint an arbitrator; (3) require that any arbitration be governed by the Washington Uniform Arbitration Act; (4) allow for arbitration by one rather than three arbitrators; or (5) otherwise allow the laws or courts of Washington to influence where and how the arbitration proceeds.

Count 2: Conditional Petition to Compel Arbitration

48.     Talen Montana re-alleges ¶¶ 1-47.

49.     It is too early to reasonably predict whether Colstrip will be capable of producing electricity consistent with PUP after 2025.   That determination will turn on various factors, including the price of power, the price of coal, and the condition of the units, none of which can be assessed this far in advance.

50.     It is also too early to assess whether any potential decision to retire Colstrip at any particular time is a correct or incorrect one.   There is no formal proposal to close Colstrip and

10

therefore any dispute over such a proposal or decision has not yet been sufficiently defined to permit adjudication.

51.     Nevertheless, Section 18 of the O&O Agreement provides: "Any controversies arising out of or relating to this Agreement which cannot be resolved through negotiations among the Project Users within thirty (30) days after inception of the matter in dispute shall, upon demand of any Project User involved in the controversy, be submitted to an Arbitrator having demonstrated expertise in the matter submitted."

52.     NorthWestern has served a Demand for Arbitration to resolve a dispute that it contends is within the scope of that binding arbitration provision.

53.     Montana Code § 27-5-323 requires that an arbitration be held in Montana before a panel of three arbitrators selected under the Montana Uniform Arbitration Act.

54.     Avista, PacifiCorp, Portland, and Puget are refusing to arbitrate in accordance with Montana Code § 27-5-323. Instead, they filed a lawsuit in Washington seeking to compel the owners to arbitrate in Washington under the Washington Uniform Arbitration Act. Their petition asks a Washington court to enforce contractual venue provisions that are invalid under Montana law.

55.     Under the Montana Uniform Arbitration Act, on the application of a party showing an agreement to arbitrate and the opposing party's refusal to arbitrate, "the district court shall order the parties to proceed with arbitration . . . ." Mont. Code § 27-5-115(1).

56.     Talen Montana is entitled to an order conditionally compelling arbitration in accordance with Montana Code § 27-5-323 and the Uniform Arbitration Act if and to the extent the arbitration provisions in the O&O Agreement may survive enactment of Montana Code § 27-

11

Complaint

5-323 and there is a sufficiently ripe and concrete dispute that is properly resolved at this time by arbitration under the O&O Agreement. Mont. Code § 27-5-115.

## Prayer for Relief

Talen Montana respectfully requests the following relief:

1.  A declaration that Sections 18 and 34(c) of the O&O Agreement are invalid insofar as they (1) require that any arbitration be conducted in Washington; (2) permit a Washington court to appoint an arbitrator; (3) require that any arbitration be governed by the Washington Uniform Arbitration Act; (4) allow for arbitration by one rather than three arbitrators; or (5) otherwise allow the laws or courts of Washington to influence where and how the arbitration proceeds.

2.  An order enjoining Defendants to comply with, and conditionally compelling them to arbitrate in accordance with the O&O Agreement as modified by, Montana Code § 27-5-323.

3.  For such of its costs, fees, and expenses as may be awardable at law or in equity.

4.  For such other and further relief as the Court deems just, equitable, and proper.

Dated: May 4, 2021

/s/Robert L. Sterup
Robert L. Sterup
Brown Law Firm, PC
315 North 24th Street
Billings, Montana 59101
Telephone: (406) 248-2611
Facsimile: (406) 248-3128
rsterup@brownfirm.com

Barry Barnett (*pro hac vice*
application forthcoming)
Adam Carlis (*pro hac vice*
application forthcoming)
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002

Telephone: (713) 651-9366
Facsimile: (713) 654-6666
bbarnett@susmangodfrey.com
acarlis@susmangodfrey.com

Alexander P. Frawley (*pro hac vice*
application forthcoming)
Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32 Fl
New York, New York 10019-6023
Tel.: (212) 336-8330
Fax: (212) 336-8340
afrawley@susmangodfrey.com

Attorneys for Plaintiff Talen
Montana, LLC

13

Complaint