IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TALEN MONTANA, LLC, | CV  21-58-BLG-SPW-TJC |
| Plaintiff, | **FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| AVISTA CORPORATION; NORTHWESTERN CORPORATION; PACIFICORP; PORTLAND GENERAL ELECTRIC COMPANY; and PUGET SOUND ENERGY, INC., | |
| Defendants. | |

This action was originally brought in the State of Montana Thirteenth Judicial District Court, Yellowstone County.  On May 17, 2021, Defendants Avista Corporation, PacifiCorp, Portland General Electric Company and Puget Sound Energy, Inc. (collectively, the "Pacific Northwest Owners"), timely removed, alleging this Court has diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441. (Doc. 1.)

Presently before the Court is Talen's Motion to Remand.[1]  (Doc. 24.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 25, 33, 34, 37.)

---

[1] The Pacific Northwest Owners have also filed a Motion to Consolidate this action with *Portland General Electric Company, et al. v. NorthWestern Corporation, et al.*, Case No. 1:21-cv-00047-SPW-KLD.  (Doc. 19.)  That motion has been stayed pending resolution of the Motion to Remand.  (Doc. 55.)

Having considered the parties' submissions, the Court **RECOMMENDS**
Talen's motion be **GRANTED**, as set forth below.

## I.    BACKGROUND

The parties are co-owners of Units 3 and 4 of the coal-fired electrical
generation facility in Colstrip, Montana (the "Project").  Plaintiff Talen Montana,
LLC ("Talen") is a Delaware limited liability company with its principal place of
business in Texas.  Talen is the also the operator of the Project.  Defendant
NorthWestern Corporation ("NorthWestern") is a Delaware Corporation, with its
principal place of business in South Dakota.  Defendants Avista Corporation and
Puget Sound Energy are Washington corporations, with their principal places of
business in Washington.  Defendants PacifiCorp and Portland General Electric
Company are Oregon corporations, with their principal places of business in
Oregon.

The ownership and management of the Project is governed by an Ownership
& Operation Agreement ("O&O Agreement").  The O&O Agreement contains an
arbitration provision that provides for arbitration of disputes under the Agreement
to be venued in Washington state, held before a single arbitrator, and governed by
the Washington Uniform Arbitration Act.

The Pacific Northwest Owners have sought to close the Project by the end of
2025; whereas Talen and NorthWestern maintain the Project should continue to

operate under the O&O Agreement.  NorthWestern also contends that any decision to close the Project must be made by a unanimous vote of the co-owners.

This dispute was impacted by legislation introduced in Montana's 2021 legislature under Senate Bills 265 and 266.[2]  Senate Bill 265 proposed to amend Mont. Code Ann. § 27-5-323 to require the arbitration of disputes concerning Montana electrical generation facilities to occur within Montana, before a panel of three arbitrators, and be governed by the Montana Uniform Arbitration Act.  The Bill provided that "[a]n agreement concerning venue involving an electrical generation facility in this state is not valid unless the agreement requires that arbitration occur within the state before a panel of three arbitrators selected under the Uniform Arbitration Act unless all parties agree in writing to a single arbitrator."  S.B. 265, 67th Leg., § 1 (Mont. 2021).  Senate Bill 265 applies retroactively to petitions to compel arbitration made on or after January 1, 2021. *Id.*

---

[2] Senate Bill 266 proposed to revise the Montana Unfair Trade Practices and Consumer Protection Act to create two new violations: (1) to prohibit the "failure or refusal of an owner of a jointly owned electrical generation facility in the state to fund its share of operating costs associated with a jointly owned electrical generation facility"; and (2) to proscribe "[c]onduct by one or more owners of a jointly owned electrical generation facility in the state to bring about permanent closure of a generating unit of a facility without seeking and obtaining the consent of all co-owners of a generating unit."  S.B. 266, 67th Leg., § 2 (Mont. 2021).  The Bill also provided for civil fines of up to $100,000 per violation, with each day of a continuing violation constituting a separate offense. *Id.*

3

On February 19, 2021 and again on March 19, 2021, both Talen and NorthWestern testified at the Montana legislature in favor of Senate Bills 265 and 266.  The Pacific Northwest Owners testified against the Bills.

In the meantime, the following sequence of events resulted in the initiation of this action in Montana state district court and removal to this Court:

On February 9, 2021, NorthWestern provided notice that it intended to initiate an arbitration within 30 days to resolve the dispute over the potential closure of the Project.  NorthWestern served the arbitration demand on March 12, 2021.  The demand was later amended on April 13, 2021.

That same day of the amendment, April 13, 2021, the Montana Legislature passed Senate Bills 265 and 266.

The following day, on April 14, 2021, the Pacific Northwest Owners filed a lawsuit against Talen and NorthWestern in the Superior Court of the State of Washington for Spokane County, seeking an order compelling the co-owners to arbitrate in Washington, under the Washington Uniform Arbitration Act, and before a single arbitrator, as provided in the O&O Agreement.  *Avista Corp., et al. v. NorthWestern Corp., et al.*, Case No. 21-2-01000-32 (Wash. Super. Ct. April 14, 2021).  Talen subsequently removed that action to United States District Court for the Eastern District of Washington.  *Avista Corp., et al. v. Northwestern Corp., et al.*, Case No. 2:21-cv-163-RMP (E.D. Wash. May 14, 2021).  Thereafter, the

4

Eastern District of Washington transferred the case to this Court. *Avista Corp., et al. v. Northwestern Corp., et al.*, Case No. 21-cv-90-SPW-TCJ, Docket No. 44 (D. Mont. Aug. 19, 2021).

On May 3, 2021, Senate Bill 265 and Senate Bill 266 were signed into law by Montana Governor Greg Gianforte.

On May 4, 2021, the Pacific Northwest Owners filed suit in this Court against Talen and NorthWestern, challenging the constitutionality of Senate Bill 265.[3] *Portland Gen. Elec. Co., et al. v. NorthWestern Corp., et al.*, Case No. 21-cv-47-SPW-KLD (D. Mont. May 4, 2021).

Later that afternoon, Talen filed the instant action against the Pacific Northwest Owners and NorthWestern in Montana state court. (Doc. 3.) Talen initially named NorthWestern as a "nominal" defendant, but amended the complaint a day later to remove the "nominal" designation. (Doc. 3 at ¶ 4; Doc. 4 at ¶ 4.)

Talen's claims in this case rest on Senate Bill 265. Specifically, Talen seeks to enforce Mont. Code Ann. § 27-5-323, as amended by Senate Bill 265, to require the arbitration of the parties' dispute to take place in Montana before a panel of three arbitrators. (Doc. 4.)

---

[3] The complaint was later amended to add constitutional challenges to Senate Bill 266. *Portland Gen. Elec. Co.,* Case No. 21-cv-47-SPW-KLD, Docket No. 32.

On May 17, 2021, the Pacific Northwest Owners removed the case to this Court.  In the Notice of Removal, the Pacific Northwest Owners alleged NorthWestern should be realigned as a plaintiff because its interests are actually aligned with Talen's, and once properly realigned, there is complete diversity of citizenship.  (Doc. 1.)

On June 1, 2021, the Pacific Northwest Owners filed Counterclaims in this case against Talen and NorthWestern, alleging Senate Bill 265 is unconstitutional and preempted by the Federal Arbitration Act.  (Docs. 11, 12, 14, 15.)

Thereafter, on June 16, 2021, Talen filed the instant Motion to Remand. (Doc. 24.)  Talen argues diversity jurisdiction is lacking because NorthWestern is not diverse, and there is no basis to realign NorthWestern as a plaintiff.

## II.    DISCUSSION

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Removal of civil actions from state court is permitted only when the federal court has original jurisdiction over the action, and removal is not otherwise expressly prohibited by statute.  28 U.S.C. § 1441.  In general, federal district courts have original jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and in actions where there is complete diversity of citizenship between the parties and the

amount in controversy exceeds $75,000.00.  28 U.S.C. § 1332.

The removal statute is to be strictly construed.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377 (internal citation omitted).  The presumption against removal jurisdiction "means that the defendant always has the burden of establishing that removal is proper."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  Any doubts about federal jurisdiction should be resolved in favor of remand.  *Id.*

### A.   Whether NorthWestern Should be Realigned with Talen

Subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 "requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants."  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  Here, Talen and NorthWestern are both citizens of Delaware, and therefore diversity of citizenship is lacking.

The alignment of the parties as alleged in the complaint, "however, is not binding on the court."  *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983).  "Federal courts have broad authority to 'look beyond the pleadings, and arrange' – or realign – 'the parties according to their sides in the dispute.'"  *Scotts Co., LLC v. Seeds, Inc.*, 688 F.3d 1154, 1156 (9th Cir. 2012) *citing City of*

*Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941). "If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes." *Dolch*, 702 F.2d at 181. Courts have authority to realign the parties "whether the realignment has the effect of conferring or denying subject matter jurisdiction on the court." *Smith v. Salish Kootenai College*, 434 F.3d 1127, 1133 (9th Cir. 2006).

Realignment is determined based on the "primary matter in dispute." *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987). Courts must realign the parties based on the primary controversy, even if the parties are adverse to each other on secondary or ancillary issues. *Dolch*, 702 F.2d at 181; *U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992) ("[D]espite the fact that there may be actual and substantial ancillary or secondary issues to the primary issue, the parties should be aligned in accordance with the primary issue in an action."). When considering the primary matter in dispute, the court may not consider claims made in a different case. *Scotts Co. LLC*, 688 F.3d at 1157-58.

Here, it is clear from the First Amended Complaint, that the primary purpose of this lawsuit is to enforce Mont. Code Ann. § 27-5-323, as recently amended by Senate Bill 265, to require arbitration to occur in Montana before three arbitrators.

Indeed, in the Prayer for Relief, Talen seeks:

>    1.      A declaration that Sections 18 and 34(c) of the O&O
> Agreement are invalid insofar as they (1) require that any arbitration
> be conducted in Washington; (2) permit a Washington court to
> appoint an arbitrator; (3) require that any arbitration be governed by
> the Washington Uniform Arbitration Act; (4) allow for arbitration by
> one rather than three arbitrators; or (5) otherwise allow the laws or
> courts of Washington to influence where and how the arbitration
> proceeds.
>    2.      An order enjoining Defendants to comply with, and
> conditionally compelling them to arbitrate in accordance with the
> O&O Agreement as modified by, Montana Code § 27-5-323.

(Doc. 4 at 11-12.)

Talen contends the primary issue in this case is whether there is a ripe

dispute for arbitration.  But Talen's argument is plainly contradicted by its Prayer

for Relief in the First Amended Complaint.  Although, there may be a conflict

between NorthWestern and the Pacific Northwest Owners regarding whether there

is a ripe dispute for arbitration, that issue is ancillary to the primary controversy in

this case.  The First Amended Complaint does not specifically seek resolution of

whether there is a sufficiently concrete dispute that should proceed to arbitration.

Rather, Talen requests an order "conditionally compelling" arbitration in

accordance with Mont. Code Ann. § 27-5-323 and the Montana Uniform

Arbitration Act.

Thus, it is apparent that principal purpose of this action is to invalidate the

provision in the O&O Agreement that requires arbitration in Washington state

before a single arbitrator.  On that issue, it appears Talen and NorthWestern were aligned at one point, as evidenced by the parties' joint lobbying in support of Senate Bill 265.  But since that time, there is no indication they continue to be aligned in this lawsuit.  Indeed, NorthWestern has carefully avoided committing to the position taken by Talen that arbitration of the parties' dispute must take place in Montana before a panel of three arbitrators.

In its Answer, NorthWestern admitted "there is a dispute between the parties" as to whether the arbitration should be managed under the O&O Agreement or Mont. Code Ann. § 27-5-323.  (Doc. 10 at 3.)  NorthWestern did not indicate, however, which side of this dispute it favors.  For example, Talen alleged "[u]nder Montana law, the arbitration venue clauses of O&O Agreement, providing for arbitration in Washington State under the Washington Uniform Arbitration Act, are invalid."  (Doc. 4 at ¶ 45.)  NorthWestern declined to address this allegation, stating instead "paragraph 45 of the Amended Complaint contains legal conclusions to which no response is required."  (Doc. 10 at ¶ 45.)  Likewise, in response to Talen's allegation that "Montana Code § 27-5-323 requires that an arbitration be held in Montana before a panel of three arbitrators selected under the Montana Uniform Arbitration Act" (Doc. 4 at ¶ 53), NorthWestern answered only "the terms of MCA § 27-5-323 speak for themselves."  (Doc. 10 at ¶ 53.)

Moreover, NorthWestern side-stepped the opportunity to make its position

clear in its response to the instant motion.  Rather than squarely addressing

whether it agrees with Talen's position regarding enforcement of Mont. Code Ann.

§ 27-5-323, NorthWestern maintained only that this controversy needs to promptly

proceed to arbitration.

In light of the ambiguity concerning NorthWestern's position on the primary

issue in dispute, and particularly considering the requirement that all doubts about

federal jurisdiction be resolved in favor of remand, *Gaus*, 980 F.2d at 566, the

Court declines to realign NorthWestern with Talen for jurisdictional purposes.

Without realignment, complete diversity of citizenship is lacking.

**B.      Whether NorthWestern May be Ignored as a Nominal Defendant**

NorthWestern and the Pacific Northwest Owners alternatively argue that

NorthWestern should be considered a nominal defendant, and thus, its citizenship

may be ignored for purposes of determining diversity jurisdiction.  Although

NorthWestern was initially labeled as a nominal defendant, Talen amended the

Complaint to remove that designation.  But even assuming NorthWestern is

nominal, the Pacific Northwest Owners failed to allege that NorthWestern is

nominal in the Notice of Removal.  As a result, they cannot now rely on that

argument to prevent remand.  *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1381

(9th Cir. 1988).

A notice of removal must contain "a short and plain statement of the grounds

11

for removal," must be filed within 30 days of being served with the complaint, and all defendants who have been properly joined and served must join in or consent to the removal. 28 U.S.C. § 1446(a), (b). The consent of nominal parties, however, is not required. *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232 (9th Cir. 1986). If, as here, fewer than all defendants join in removal, the removing party must affirmatively explain the absence of any non-joining defendants in the notice of removal, including absence due to nominal party status. *Prize Frize, Inc. v. Matrix*, 167 F.3d 1261, 1266 (9th Cir. 1999); *Price v. JPMorgan Chase Bank N.A.*, 2016 WL 3912842, at *2, n.1 (D. Nev. July 19, 2016). The notice "cannot be amended to add a separate basis for removal jurisdiction after the thirty day period." *O'Halloran*, 856 F.2d at 1381.

Here, the Pacific Northwest Owners and NorthWestern have raised the "nominal party" argument for the first time in response to the motion to remand. Because more than thirty days has passed since the Complaint was served, this argument is not timely or sufficient. Accordingly, the Pacific Northwest Owners and NorthWestern's arguments regarding NorthWestern's status as a nominal party is unavailing. *See e.g. Pacificorp Grp. Holdings v. Ins. Co. of State of Pennsylvania*, 2007 WL 1071953, at *2 (W.D. Wash. Apr. 9, 2007) (explaining "a defendant's inclusion of the 'nominal party' argument for the first time in its response to the motion to remand was insufficient to satisfy the defendant's

12

burden, as such argument should have been included in the original notice of removal."); *Price*, 2016 WL 3912842, at *2, n.1 (explaining that even if nominal defendant's consent was ultimately unnecessary for effective removal, the removing party nonetheless was required to affirmatively set forth this assertion within its petition for removal).

The Pacific Northwest Owners have failed to satisfy their burden that removal of this action was proper. The Court, therefore, recommends that this action be remanded to the state court.

## III. CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Talen's Motion for Remand (Doc. 24) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 1st day of December, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge